All right. Next case on the docket is Nelson v. Old National Bayview and Bayview Financial Trading Group. Clause number 5-12-0419. Mr. Stobbs for the appellant. Good morning, Your Honors. My name is John Stobbs, and may it please the Court, Counsel. I was getting ready yesterday, and I was going through everything and getting dramatically prepared, and I realized that the case had been up here before, so you obviously know the record as well as I do. And I was driving down. I was thinking how I could shorten what I was going to say even more, and now the fact that my stomach is grumbling, it's going to be, as my friend Tony Muellenkamp said, extremely efficient. This is the first time that I've ever entered my appearance on a case where it was in the middle of the appellate process, and it's a unique situation. I had an opportunity to read the briefs on both sides, and before I looked at the record at all, I thought through the briefs, and the briefs are exceptionally well written on both sides. In fact, the case has been up here before. I don't think I need to go into excruciating details about what transpired. And when I went through the record, I had great difficulty understanding, and I still have difficulty understanding, just on a human level, I guess, how the wrong entity can foreclose on someone's property, and they'll want to be paid for that mistake. I just don't – I don't know what common sense tells me that that's something that shouldn't be. The thing I want to start talking about is the slander of title, and I understand the argument of privilege. I understand that, and I think that that's a – it's a good rule, it's a good law, and it's something that makes sense. But here it's the fact that Bayview, when Jeff Nelson paid the mortgage off, they wouldn't release it. And I think that what Mr. Magner was saying in his brief was that if it's actionable to report a document, then it should be actionable if the party refuses to release a mortgage document that was previously reported. And I think that that's the argument, I think, that in this kind of a situation, there is a slander of title. And very briefly, the issue of – I think it was Paragraph 7 of the amended judgment, the Supreme Court Rule 137. The rule says that it has to – that the judge, when they're going to order those kind of sanctions, there has to be a record, there has to be a hearing, there has to be a motion filed. So at the very least, I think that that's something that should – that this Court should take into consideration. And I kind of chuckled because in any of these kind of cases, and you see them all the time, I don't see them nearly as much, but that when we get to this point, it always comes down to fees and costs. And again, I'm just going to repeat what I said before. It's – Bayview isn't entitled to fees and costs under the American rule. And I like the – I just like the title of it. It's the American rules. It's not that if you win, then you get the attorney's fees and costs. And so I don't think that in this situation, there's any contractual obligation to pay. I think that it's something that is accurate. And finally, regarding RESPA, I think that it's – again, I think that the briefs adequately set that out in terms of what it says. And so if I don't – if there's no questions, I'll be seated. Thank you. Thank you, Mr. Stubbs. And is it Mr. White? We. We. Your turn. Good afternoon. Go most. I think I got it. My name is Michael Week. I represent Bayview Loan Servicing and Bayview Financial Trading Group, LP. May it please the Court and Counsel, as I got ready to prepare, I started to go through the briefs. And I agree with Mr. Stubbs that much of this is laid out in those briefs. But what I wanted to first touch upon what I believe are the issues that aren't in dispute because I think they play upon some of the ultimate determinations that might be made here. After remand in a lengthy trial, at least by the standards for this type of case, Mr. Nelson was found in default, and there's been no appeal or issue taken with that finding. The judge ruled that upon reversal and remand, the parts were restored to their original positions, the mortgage was reinstated, the redemption vacated. There has been no appeal taken from that issue. On remand from this Court, a motion is filed, and without objection, in the record by agreement, Bayview was given leave to file an amended complaint, which it did in the 04 case. It also filed a counterclaim in the 07 case. Whether Bayview obtained, there is no issue that Bayview Loan Servicing obtained a written document which we've styled as the corrected assignment, which memorialized that it had been and always was the assignee of this mortgage, and I'll get into that a little bit more in terms of snapshots in time, based on now what is a more complete and developed record. There's no issue with regard to that. There's no issue whether on remand Mr. Nelson not only litigated his default, challenging whether or not he had ever violated the terms of the mortgage or his obligations under RESPA to make his payments, whether Bayview Loan Servicing was the assignee or the holder or whatever it was, without dispute, the servicer. He also litigated the redemption payments that he made, and we have cited to the record. There's no issue that Bayview Loan Servicing had to incur fees and costs attempting to collect and enforce its rights under the mortgage, and there will be a couple of, two or three time periods up to the first appeal, the first appeal to remand in post, and there is no dispute that the fees sought post remand of approximately $24,000 all, pursuant to the fee petition, post remand corrected assignment and amendment were fair and reasonable. Nobody has challenged that or the finding of the court in that regard. There is no issue taken with the court's finding that Mr. Nelson failed to prove that he incurred any actual damage as a result of the slander title claim, whatever that was, nor is there any issue taken with the trial court's finding that he wasn't entitled to attorney's fees for a slander title claim. There is no issue taken that Nelson failed to prove that he incurred reasonable attorney's fees between the redemption, in quotes, and the reversal by this court in the first case, and that was in the context of mortgage act. The court found he was entitled to $200,000. That's a subject of our cross appeal, and said you can prove up attorney's fees. We, the parties, agreed that that essentially wasn't entitled, but essentially was the measure of damage, and he was given the opportunity to do that. The court found that he failed to prove up any of those attorney's fees for this period, which the court determined to be the applicable period during which he might have been subject, entitled to, I think the court determined he was entitled to a release during that period, and he failed to prove up those damages, the court found, and there's been no issue or appeal taken from that. I thought this was a pretty complicated case with a lot of issues, but now that you've gone over all the issues that haven't been raised, I see it could have really been bad. And as I went through it, I was thankful. I'm kind of grateful now that. Judge, I am too. Because as we, and sometimes it's just the nature of the beast. I mean, we're now here for the third time. My first time before you on this case, but we're here for the third time in this larger case, the third-party claim against Mr. Nelson was dismissed by the statute of limitations, and that is the subject of that second order. What is in dispute? Whether BLS was entitled to fees incurred during the original foreclosure, and Nelson argues that that can't be as a matter of law because of this court's prior opinion. And he argues that point without citation to any authority other than to this prior opinion, which remanded the case to the trial court for further proceedings. And that was because we found that the original foreclosure proceeding was brought by the wrong entity. I think that. And there are separate entities. Everybody agrees on that. So why should Bayview Loan Servicing be able to recover attorney's fees for an entire prosecution and appeal of a mortgage foreclosure by some other separate entity? Well, Bayview Loan Servicing was the prosecuting party in that first appeal. And when it came up, it came up on a motion for summary judgment granted Bayview Loan Servicing. Well, but the records show they didn't own the mortgage at that point. Well, what the records show was is that there was a June 22, 2004, written assignment of mortgage to an entity called Bayview Financial Trading Group. Well, actually, tell me if I'm wrong about this, but the records show it was signed in blank. No, sir. And somebody stamped the wrong stamp on it. And that's a correct recitation of what the facts were. But what the court found was what the court had before it for the entire record was the motion for summary judgment by Bayview Loan Servicing granted by the trial court. And attached to that motion for summary judgment was this assignment that included the name Bayview Financial Trading Group. The court found that there was nothing in the record before it that even indicated when or if Bayview Loan Servicing acquired any interest in the mortgage or the note. But to the point that as a matter of law we're not entitled to these because of this prior court's decision, I think it's wrong for at least a couple of points. I think there's a separate argument as to whether or not there could have been a separate argument as to whether or not they were entitled to those because they weren't reasonable and necessary. But that's not an issue before the court because that hasn't been appealed. And the reason why it isn't an issue as a matter of law because that decision wasn't outcome determinative. By its terms it didn't make a determination. And when the case was remanded to the trial court, consistent with the cases that we cite in our brief, we filed, sought, and even filed this amended complaint. That complaint was answered. The amended complaint was in the name of Bayview Loan Servicing and referred to the corrective assignment, which, as I said, indicates that Bayview Loan Servicing was in fact always the... And when you say corrected assignment, what happened was Bayview Financial Trading Group, LLC, assigned it to Bayview Loan Servicing, right? They signed a document titled corrected assignment, which said in the body of it, we're assigning whatever rights we have because we were never intended to be the assignee. Because whatever rights we acquired, it was through mistake or whatever. By mistake. Right. So when that complaint was filed and answered, there's no record of any affirmative defenses filed by Mr. Nelson to the effect that the decision of this court was outcome determinative, issued preclusion, a collateral estoppel or res judicata. It's a weighted issue. Now, when it was remanded, what's important is that the proceedings included an amended complaint. It included a corrective assignment. It included evidence that Bayview Loan Servicing had always been the correct assignee. And if you look at the factual pattern, the way this happens, and I'm going to have to be brief, is in June of 2004, there was this transaction with Old National Bank. Part of that is the assignment in blank dated June 27. And they did assign it in blank, right? Correct. They endorsed the note in blank. They assigned it in blank, and they delivered it to Bayview Loan Servicing. Bayview Loan Servicing imaged it, placed it with their custodian. Bayview Financial Trading Group, on July 13, in evidence, executed what they called the dummy assignment, which is assignment for the world to know if anything ever closes in on them financially. They have no interest in that mortgage and that loan. I have this picture of this guy sitting here, and he's got a Bayview Loan Servicing stamp, and he's got a Bayview Financial Trading Group stamp, and these assignments in blank are coming in from banks. Is that basically what we're talking about? I think the evidence, I wish I could get that image out of your head, Judge. I'm just asking because, I mean, it seems curious to me that they get assigned in blank to begin with, and then you've got to do this dummy assignment. Well, because the law under the code and under the statute is the note, the mortgage is always incident to the note. It's the loan document that's the note. That note binds you to pay us. This simply collateralizes it. We have to perfect that through the process of finding a foreclosure based on the note in the mortgage. So they get this. As of August 1, 2004, Bayview Loan Servicing is in possession of the note endorsed in blank. As we cite in our brief, that makes them the holder of that note. It gives them an interest in the mortgage and gives them standing under the statute and common law to file a foreclosure action. On November 22, the foreclosure action is filed by Mr. Nell after he receives from Bayview Loan Servicing the note endorsed in blank. He files it. The assignment, which we have called the assignment in error, isn't completed until after this foreclosure action. So if you get to the nit and the grit, as of the date this foreclosure action was filed, and in fact for the entirety of the time, Bayview Loan Servicing was the assignee of that mortgage. The holder of the blank assignment. They, at that time, they held the blank assignment. Kind of like a bearer bond or something. They held the note endorsed in blank. That was payable to them. That instrument was in blank. It was theirs. And because it was theirs, they had a corresponding right. But the issue is, is under 1208, it's also quite clear that the holder of that indebtedness, the note, is a party who had standing to bring this. So on the facts, the issue was developed where, in fact, Bayview Loan Servicing had this status that was different than was presented to the court below. Now, as I said, there was no challenge to Bayview Loan Servicing's standing after the amended complaint was filed. There was no further defensive standing at that time. So the fees that were paid according to that were paid consistent with the rules as set forth in our brief about who's entitled to be as the holder of the mortgage. Just briefly, as the holder of that note endorsed in blank, Bayview Loan Servicing had all the rights to foreclose that mortgage. Rose Stone, even Gilbert, all the cases cited, hold as such. With regard to the slammer, I want to touch on that briefly. Counsel, Mr. Nelson has raised the issue that the court's ruling that his slammer claim was privileged is improper under the law. There was no finding that his slammer claim was privileged. Rather, the court found that the claim that the court originally awarded for filing and prosecuting the foreclosure action was never pled, and if it had been, it would be privileged. Mr. Nelson never argued when the court entered judgment on Cup 5 that he was entitled to relief in his way of that. More importantly, for any other reason in the record, including the finding undisputed that there was no proof of actual damages, he had no claim for a slander. And based on the finding, there was no malice. The record is pretty clear. On March 16th, the redemption payment is made. By March 29th, Neville is telling counsel, I have a release if you're going to dismiss the appeal. The decision was made not to redeem consistent with 15-15-10 or 16-03. The decision by Mr. Nelson was made to litigate to the end. Thank you, Your Honor. Thank you, Mr. Wheat. Your Honor, may I ask for four minutes of my time, Mr. Wheat? Sure. That means Mr. Sterl will have three minutes instead of five. Go ahead. I should have asked if you wanted to accept that. Two minutes would have been good. On the issue with regard, I'll jump to the other issue, which is outstanding with regard to our fees that relate to the FDCPA, Rule 137. Essentially, our fees claims are under the note mortgage for those claims, our defense of the claims of slander or title. And ultimately, the court determined that they didn't have a slander or title claim. That's the $10,000 change. With regard to the $8,000 change, that is a claim that we made, not duplicatively, but under 1-1692-K-83, which says that the claim has gotten bad faith. You can get fees. Bad faith is described as no reasonable hope of ever having a case. And my point to the court is, is that if he had filed it on the day we filed our case as a counterclaim consistent with the statute of limitation, perhaps, it would have been barred because he pled himself out of the claim by alleging that his loan was current when we acquired it. We aren't a debt collector. With regard to 137, the argument is much the same. The argument being that it was never warranted by existing law because he pled fast and offered proofs at trial that were not consistent with a warranted case under existing law. We were not a debt collector. We being Baby Loan Servicing. Finally, judges, in support of the orders, and there's really been no mention of this in brilliant briefs, in support of Baby Financial Trading Group, the two claims against Baby Financial Trading Group were both predicated on this notion that he redeemed and was entitled to a release. The court correctly found that there's no evidence at all in the record that anything was ever paid to Baby Financial Trading Group, by which Baby Financial Trading Group could be expected to issue a release under either the Mortgage Act or the slender plan. Thank you very much. Thank you, Mr. Stewart. And I apologize for the speed. No problem. And for the record, I think I used to always do this in the circuit court. Mr. Greg Stewart and I are not related in any way. So go ahead, Mr. Stewart. Thank you. Please support counsel. Okay. Please support counsel. Throughout these proceedings, trial court, appellate court, all national banks have been represented by Conrad Elliott and Carmine. I'm Greg Stewart. We have Conrad Elliott. Old National Bank got caught up in a fight between two other dogs. So I'm the third dog. That's why I gave more time to the bigger dogs that were arguing this out. Old National Bank got brought into this because years ago they gave a loan mortgage for a residential real estate in Crossville, Illinois, to the Nelson's. They come in and wanted to loan my property at their house. Old National Bank did it. At the time that they gave the money to the Nelson's, included in the packet, part of the record was Old National Bank was subject to provisions of RESPA, the Real Estate Settlement Practices Act. Federal law, which tells national banks, here's what you have to do if you transfer the service of a mortgage, a note that you have, which happened in this case. Later on, I've seen the facts, and I'll stand on Old National's brief. Old National signed the mortgage to baby trading or baby loan servicing. That was out of our hands at the time. But Old National Bank sent a notice to Nelson's that said, pursuant to RESPA, here's your notice. We're leaving. Someone else is coming in. Mr. Nelson, the record is at trial. He got upset with Old National Bank. And when he went in to get his mail, he would throw anything away from Old National Bank that didn't look like a bank statement. So he never got his goodbye letter. So whether he got it or not, maybe it was in his hands, but it made it into the trash can at the post office. He filed suit. Mr. Nelson filed suit against Old National Bank, two counts, one for violation of the Consumer Practices Act, another one for common law negligence. Judge Sutton and Carmine heard the case. At the close of the case, he says, you missed the statute of limitations. It looks like they gave notice three years before you filed your case. And RESPA gives me the statute of limitations for that three years. We documented that in our brief as to why RESPA's three-year statute of limitations provided. Governors of this case, there is specific direct federal preemption in RESPA of any conflicting state laws. So here we are. Mr. Nelson sued. Judge Sutton found that you violated the statute of limitations because we filed an affirmative defense in the case, which said we gave you the RESPA notice more than three years before you filed. Mr. Nelson did not make a reply to our affirmative defense. We've got the affirmative defense in the brief. Also, the facts are the notice went out more than three years before you filed this case. So in regard to Old National Bank, we believe we're on firm grounds in our arguments to Judge Sutton. Judge Sutton is on firm grounds in his ruling that Old National Bank, its dog, got out of the fight. And we got out at the close of plaintiff's case in chief. So if you have any questions, I'll be glad to answer them. But this dog is tired of this fight. Thank you, Mr. Stewart. Any rebuttal, Mr. Stubbs? No, sir. All right. Thank you all for your briefs and arguments. We'll take this matter under advisement and issue a decision in due course. Thank you, guys.